# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| VAN TATE, | | 1:07-cv-01439 OWW DLB HC |
| | Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | | |
| | | [Doc. 1] |
| KEN CLARK, | | |
| | Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

PROCEDURAL HISTORY

Following jury trial in the California Superior Court for the County of Kings, Petitioner was convicted of committing a lewd and lascivious act on a child under the age of 14 in violation of California Penal Code section 288(a).[1] Petitioner admitted two prior convictions: one constituted a strike under the Three Strikes law (§ 667(b)-(i)), and the other constituted both a strike and as a habitual sex offender enhancement (§ 667.71.) Petitioner was sentenced to 88 years to life: 75 years to life pursuant to 667(e)(2)(A)(i), a ten year enhancement pursuant to 667.6(b) and a three year enhance pursuant to 667.5(a).[2] (CT 208-209.)

---

[1] All future references are to the California Penal Code, unless otherwise indicated.

[2] As stated below, the Court of Appeal struck the ten-year enhancement imposed pursuant to 667.6. (Lodged Doc. No. 1, Opinion, at 11.)

1

Petitioner filed a timely notice of appeal with the California Court of Appeal, Fifth Appellate District. On May 16, 2006, the Court of Appeal affirmed Petitioner's conviction, but struck the 10-year enhancement imposed pursuant to § 667.6. (Lodged Doc. No. 1, Opinion at 13.)

On or about June 20, 2006, Petitioner filed a petition for review in the California Supreme Court. (Lodged Doc. No. 5.) The petition was denied on July 26, 2006. (Lodged Doc. No. 6.)

Petitioner filed the instant federal petition for writ of habeas corpus on September 17, 2007, in the Sacramento Division of this Court, which was transferred to the Fresno Division on October 3, 2007. (Court Docs. 1, 6.)

Respondent filed an answer to the petition on January 22, 2008, and Petitioner filed a traverse on February 1, 2008. (Court Docs. 14, 17, 18.)

## STATEMENT OF FACTS[3]

Jane[4] was the product of a short relationship between [Petitioner] and Jane's mother. [Petitioner] moved out of the state around the time Jane was born and had little contact with her the first few years of her life. [Petitioner] returned to California with his wife and three children to be with his terminally ill mother when Jane was approximately four or five years old. He attempted to establish a relationship with Jane while in California. [Petitioner] was first contacted about establishing a relationship with Jane by Kings County Department of Social Services after it obtained jurisdiction over Jane.

[Petitioner] visited with Jane for a short period of time. Jane spent a few nights at [Petitioner's] house. Also present during these visits were [Petitioner's] wife and three children. [Petitioner] ceased visiting with Jane when problems developed between [Petitioner] and Jane's mother. [Petitioner] moved out of state again after his mother died.

It was during one of the overnight visits that the alleged molestation occurred. Jane was seven years old at the time of trial. She testified that she visited [Petitioner] and his family while they lived in Hanford. When the prosecutor asked Jane whether [Petitioner] ever touched her in a bad way, Jane became very upset and had a difficult time answering questions. After a short recess, Jane testified that [Petitioner] touched her in a bad way in her vaginal area with his hand. She could not remember whether he inserted his finger inside her

---

[3] The following summary of facts are taken from the opinion of the California Court of Appeal, Fifth Appellate District. (Lodged Doc. No. 1.) The Court finds the state Court of Appeal's summary is a correct and fair summary of the facts of the case.

[4] The Court of Appeal referred to the victim as Jane Doe to protect her identity.

2

vagina.

Jane's mother testified [Petitioner] had very little contact with Jane until 2001 when [Petitioner] started visiting Jane's grandmother. She could not remember what part of the year the visitation took place. Jane would spend two weekends every month with [Petitioner] and his family. The visits occurred over about a six-month period. Jane began having nightmares when she returned from [Petitioner's] house. In October 2002 Jane finally told her mother something happened with [Petitioner]. Jane's mother did not report the matter to the police, but the therapist that treated Jane did.

David Jones is a detective with the Kings County Sheriff's Department. Jane told him during an interview that [Petitioner] had touched her vaginal area with his finger when giving her a bath on one occasion. Jane indicated [Petitioner] had put his finger inside her vagina. Jones also noted that when Jane talked about most topics she was very happy and conversational. When the topic was her father or the incident, however, she became very reserved and emotional.

Two witnesses testified to crimes previously committed by [Petitioner]. M.Q. is [Petitioner's] daughter from a previous relationship. M.Q. was unsure of her exact age when [Petitioner] started abusing her, but was sure it occurred when she was younger than eight years of age. [Petitioner] would come into her room and have intercourse with her. He would molest her whenever the two of them were alone together. This went on for as long as [Petitioner] lived with M.Q. and her mother. M.Q. eventually told her mother what [Petitioner] had done.

K.M. met [Petitioner] when she was 13 years old and after she had run away from home. She and a friend accompanied [Petitioner] to his home and became intoxicated. K.M. took a nap. When she woke up, [Petitioner] was in the room fondling himself in front of the bed. He proceeded to orally copulate her and have intercourse with her, despite her protestations.

[Petitioner] called three witnesses in his defense. Yolanda Rains, an investigator with the Kings County District Attorney's Office, testified Jane told her [Petitioner] molested her in the bedroom, not the bathroom.

George Byington, a police officer with the Lemoore Police Department, testified that when he interviewed Jane, she initially had trouble distinguishing between the truth and a lie, but he eventually was able to satisfy himself that she knew the difference between the two concepts.

[Petitioner] denied he molested Jane or ever gave her a bath. He stated he avoided situations like those because of his prior convictions and a desire to remain free from jail. He admitted the prior convictions and alcohol and drug abuse during those years. He claimed to have become involved with a local church and stopped using drugs.

(Lodged Doc. 1, Opinion, at 2-5.)

## DISCUSSION

A.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody

pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises out of the Kings County Superior Court, which is located within the jurisdiction of this Court.  28 U.S.C. §§ 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.     Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court.  Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding."  28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000).  "A federal habeas court may not issue the writ simply

because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted).  "Rather, that application must be objectively unreasonable." Id. (citations omitted).

While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction.  Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day, 110 F.3d 1380, 1388 (9th Cir. 1997).

Petitioner presented both claims raised in the instant petition to the California Court of Appeal, Fifth Appellate District and California Supreme Court on direct appeal.  (Lodged Doc. 1, 2, 5, 6.)  Because the California Supreme Court's opinion is summary in nature, however, this Court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion.  See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n. 7 (9th Cir.2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable application of federal law under § 2254(d)(1)).

C.   Admission of Prior Crimes Evidence

Petitioner contends that the trial court erred by admitting the prejudicial evidence of the prior sex offenses.

Over Petitioner's objection, the trial court allowed the prosecution to introduce the

testimony two by individuals whom Petitioner had committed sex crimes against, finding the probative value outweighed its prejudicial effect under California Evidence Code section 352.

On direct appeal, the California Court of Appeal found that the testimony by M.Q., one of Petitioner's daughters, was properly admitted under section 1108. Specifically, the Court found both victims were Petitioner's daughters, and both were very young when Petitioner molested them.

The Court of Appeal found that the trial court erred in allowing the admission of K.M.'s testimony because it was not sufficiently similar to the charged offense. Specifically, K.M. was not Petitioner's daughter, was not someone with whom he had a relationship prior to the molestation, was older when Petitioner molested her, and Petitioner used alcohol in the "seduction process." The Court of Appeal concluded, however, that any error in the admission of the testimony was not prejudicial and was therefore harmless. The Court based its conclusion on the fact that the trial court properly admitted M.Q.'s testimony, and it was therefore not reasonably probable that the exclusion of K.M.'s testimony would have resulted in a more favorable verdict.

California Evidence Code section 1108 states:

> (a) In a criminal act which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352.

To the extent Petitioner challenges the constitutionality of section 1108 on its face, such claim is without merit. In United States v. LeMay, 260 F.3d 1018 (9th Cir. 2001), the Ninth Circuit considering section 1108, rejected the argument that the traditional ban on the admission of propensity evidence qualifies as a "fundamental" principle of justice, as it pertains to sex offenses, when the court rejected a due process challenge to Federal Rules of Evidence 414. Section 1108 is analogous to Federal Rules of Evidence 403 and 414 which govern the admissibility of evidence of prior conduct in cases of sexual assault and child molestation. The Ninth Circuit concluded that Rule 414 did not violate due process because Rule 403 (the federal equivalent to California Evidence Code section 352) acts as a filter that results in the exclusion

of evidence that is so prejudicial as to constitute a due process violation.

Petitioner has failed to show that "the traditional ban on propensity evidence involves a 'fundamental conception of justice'" which is violated by Evidence Code section 1108. See LeMay, 260 F.3d at 1025. Thus, Petitioner has failed to demonstrate that the admission of propensity evidence violated due process. Further, the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. There is no United States Supreme Court authority finding that the admission of evidence of other crimes to prove propensity violates due process. In fact, the Supreme Court has expressly reserved consideration of whether the admission of propensity evidence may violate due process. Alberni v. McDaniel, 458 F.3d 860, 863-864 (9th Cir. 1006), *cert. denied*, 127 S.Ct. 1834 (2007); see also Estelle, 502 U.S. at 75 n. 5 ["[W]e express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime".] As such, to date there is no clearly established Supreme Court precedent forbidding the use of such evidence.

Generally, the admissibility of evidence is a matter of state law, and is not reviewable in a federal habeas corpus proceeding. Estelle, 112 S.Ct. at 477; Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir.), *cert. denied,* 478 U.S. 1021 (1985). Nevertheless, there can be habeas relief for the admission of prejudicial evidence if the admission was fundamentally unfair and resulted in a denial of due process. Estelle, 112 S.Ct. at 482; Pulley v. Harris, 465 U.S. 37, 41, 104 S.Ct. 871, 874 (1984); Walters v. Maas, 45 F.3d 1355, 1357 (9th Cir. 1995); Jeffries v. Blodgett, 5 F.3d 1180, 1192 (9th Cir. 1993), *cert. denied*, 510 U.S. 1191, 114 S.Ct. 1294 (1994); Gordon v. Duran, 895 F.2d 610, 613 (9th Cir.1990). However, the failure to comply with state rules of evidence alone is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds. Jammal v. Van de Kamp, 926 F.2d 918, 919-920 (9th Cir. 1991). Only if there are no permissible inferences that the jury may draw from the evidence can its admission rise to the level of a due process violation. Id. at 920. Intent is a permissible inference that the jury may draw from the evidence of prior bad acts. See Houston v. Roe, 177 F.3d 901, 910 n. 6 (9th Cir. 1999).

1    Turning to Petitioner's challenge to section 1108, as applied by the trial court in this case, such claim is likewise without merit. As stated by the Court of Appeal, the trial court properly recognized and weighed the prejudicial nature of M.Q.'s testimony and concluded the probative value outweighed any resulting prejudice under California Evidence Code section 352. (RT 112-114.) More specifically, both M.Q. and the victim in this case were biological children of Petitioner. Both were sexually assaulted by Petitioner when they were minors and were in a position of trust with Petitioner. As such, because the circumstances of M.Q.'s assault by Petitioner were very similar to the circumstances in the present case, the testimony was highly relevant to prove Petitioner's intent to commit the sexual offense against his daughter in this case, and although somewhat prejudicial, it cannot be said the state courts' determination was contrary to, or an unreasonable application of Supreme Court authority. As there was clearly a permissible inference to be drawn from M.Q.'s testimony which outweighed any prejudicial effect, the admission of such testimony did not violate Petitioner's due process rights.

With regard to K.M.'s testimony, although the trial court erred in allowing such evidence, the error was harmless. The jury was presented with overwhelming inculpatory evidence apart from K.M.'s testimony in the form of unequivocal testimony by M.Q. and the victim in this case. More specifically, Jane, the victim in this case, testified unequivocally that Petitioner touched her vagina with his finger and it hurt. (See RT 216-218, 220-223.) In addition, M.Q. provided testimony of the circumstances surrounding the long period of time that Petitioner molested her, which was strong evidence of Petitioner's intent to commit the sexual assault against Jane. (See RT 259-262.) In light of this solid evidence, the Court cannot find that the admission of M.Q.'s testimony, although improper, had a substantial and injurious influence on the jury's verdict in this case.

D.   <u>Trial Court Err by Allowing Defense Witness to Testify that Victim was Truthful</u>

Petitioner contends that trial court erred by allowing a witness with both bias and the aura

of expertise to render an opinion as to whether the victim was telling the truth.[5]

As previously stated, in general, the admissibility of evidence is a matter of state law, and is not reviewable in a federal habeas corpus proceeding. Estelle, 112 S.Ct. at 477; Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir.), *cert. denied,* 478 U.S. 1021 (1985). Nevertheless, there can be habeas relief for the admission of prejudicial evidence if the admission was fundamentally unfair and resulted in a denial of due process. Estelle, 112 S.Ct. at 482; Pulley v. Harris, 465 U.S. 37, 41, 104 S.Ct. 871, 874 (1984); Walters v. Maas, 45 F.3d 1355, 1357 (9th Cir. 1995); Jeffries v. Blodgett, 5 F.3d 1180, 1192 (9th Cir. 1993), *cert. denied*, 510 U.S. 1191, 114 S.Ct. 1294 (1994); Gordon v. Duran, 895 F.2d 610, 613 (9th Cir.1990). However, the failure to comply with state rules of evidence alone is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds. Jammal v. Van de Kamp, 926 F.2d 918, 919-920 (9th Cir. 1991). In order to obtain habeas corpus relief on the basis of an evidentiary error, Petitioner must demonstrate that the error was one of constitutional dimension and that it was not harmless under Brecht v. Abrahamson, 507 U.S. 619 (1993). An error is not harmless if it had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623, 113 S.Ct. 1710, 1714 (1993) (*quoting* Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253 (1946)). In order for an error to have a "substantial and injurious effect or influence," it must have "affected the verdict." O'Neal v. McAnnich, 513 U.S. 432, 115 S.Ct. 992, (1995).

During trial, Petitioner called Yolanda Rains, an investigator with the District Attorney's Office, as a witness. Rains testified that Jane told her that she was sexually assaulted in the bedroom, not the bathroom. (RT 268-269.) On cross-examination, the prosecutor asked whether Rains believed that Jane was telling the truth, and she responded that she believed the incident occurred. (RT 271.) Defense counsel objected arguing that the determination of whether the victim was telling the truth was for the jury to decide, and the trial overruled the objection. (Id.)

---

[5] The Court points out that Petitioner challenges this claim on grounds of error by trial court only, and there is no claim of misconduct on the part of the prosecution.

In denying Petitioner's claim, the Court of Appeal found that although the trial court erred in allowing Rain's testimony to stand, any error was not prejudicial. (Lodged Doc. No. 1, Opinion, at 10-11.) The Court reasoned that it was not reasonably probable that, in the absence of the erroneously admitted testimony, Petitioner would have received a better outcome. (Id. at 11.) Specifically, the Court stated:

> The jury had the opportunity to evaluate whether Jane was being truthful. Her testimony, when properly supported by M.Q.'s testimony, established a strong case against [Petitioner]. The jury deliberating for less than one hour before reaching its verdict supports this observation. It is not reasonably likely this single question, although improper, had any effect on the verdict.

(Lodged Doc. No. 1, Opinion, at 11.)

After viewing the entire record in this case, this Court agrees with the Court of Appeal, any error in allowing such testimony, was harmless in this instance, and the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. In addition to the solid evidence of Petitioner's guilt, the jury was instructed with CALJIC No. 2.20, which stated, in relevant part "[y]ou are the sole judges of the believability of a witness and the weight to be given the testimony of each witness." (RT 522; CT 136.) During closing argument, the prosecutor did not mention Rain's testimony regarding the veracity of the victim. Indeed, the prosecutor properly argued that any credibility determination was the sole province of the jury. (See RT 537-550.) On this record, it simply cannot be said that the single isolated comment by Rains that the victim was telling the truth, in light of the overwhelming evidence of Petitioner's guilt, had a substantial and injurious influence on the jury's verdict in this case.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and,

2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.

Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:** **July 21, 2008**           /s/ **Dennis L. Beck**
                                              UNITED STATES MAGISTRATE JUDGE